IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

Bruce M. Byrd,                            )
                                          )        Civil Action No. 6:11-386–JMC-KFM
                    Petitioner,           )
                                          )        **REPORT OF MAGISTRATE JUDGE**
           vs.                            )
                                          )
Tim Riley, Warden,                        )
Tyger River Correctional Institution      )
                                          )
                    Respondent.           )
_____ )

      The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

      Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

      On July 25, 2011, the respondent filed a motion for summary judgment. By order filed that same day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed his response in opposition on October 25, 2011.

## BACKGROUND

      The petitioner is presently confined in the Tyger River Correctional Institution, of the South Carolina Department of Corrections ("SCDC"), as the result of his Union County conviction and sentence. The Union County Grand Jury indicted the petitioner at the March 2006 term of court for two counts of distribution of crack cocaine (2006-GS-44-0533, 1077) and trafficking in crack cocaine (2006-GS-44-1075) (App. 69-74). Attorney

Cameron G. Boggs represented him on these charges.  On August 14, 2008, pursuant to a plea bargain with the State, the petitioner pled guilty to two counts of second offense distribution of crack cocaine and one count of second offense trafficking in crack cocaine before the Honorable John C. Hayes, III.  Judge Hayes imposed concurrent 12-year sentences on each count.  As part of the plea agreement, the State *nolle prossed* three proximity counts associated with the counts to which he was pleading guilty.  The State also *nolle prossed* "a set of charges from another incident in January of 2006 where he was charged with failure to stop for a blue light and simple possession of cocaine."  Further, "a new distribution . . . charge that was made in 2007" was dismissed "upon acceptance of the plea" (App. 1-12).

The petitioner timely served and filed a notice of appeal, which was dismissed by the South Carolina Court of Appeals on September 5, 2008, pursuant to Rule 203(d)(1)(B), SCACR, for failure to show that there was an issue that could be reviewed on appeal.  The Court of Appeals sent the Remittitur to the Union County Clerk of Court on September 23, 2008.

On April 30, 2009, the petitioner filed a *pro se* Post-Conviction Relief ("PCR") Application (09-CP-44-0136).  He alleged the following grounds for relief in his application:

1. Ineffective assistance of counsel;
2. Involuntary Guilty Plea;
3. Ineffective Assistance of Appellate Counsel; and
4. Prosecutorial Misconduct

(App. 14-19).  On June 26, 2009, the State filed its Return (App. 20-27).

On February 4, 2010, an evidentiary hearing into the matter was held before the Honorable Brooks P. Goldsmith.  The petitioner was present at the hearing with counsel, Melinda I. Butler.  Assistant Attorney General Jennifer A. Kinzeler represented the State.  The petitioner testified on his own behalf, while the State presented the testimony

of trial counsel, Mr. Boggs.  Judge Goldsmith also had before him the records of the Union County Clerk of Court regarding the subject convictions, the petitioner's SCDC records, and the guilty plea transcript (App. 28-54).

On March 26, 2010, Judge Goldsmith filed an Order of Dismissal, in which he denied relief and dismissed the application with prejudice.  The Order of Dismissal addressed the petitioner's claims that trial counsel was ineffective because:  (1)  counsel knew about but did not inform the petitioner about a plea offer from the solicitor to allow him to enter a plea of three to seven years, which was less than the 12-year sentence he is currently serving, and when the petitioner asked counsel about his case and the three to seven year plea offer, counsel did not "go too far into it"; (2)  counsel did not talk about his guilty plea with him until the "last minute"; and (3)  counsel did not adequately discuss with the petitioner or file a motion to suppress the chain of custody on the trafficking in crack cocaine charge, even though there was a defect in the chain.  The order also addressed the petitioner's claim that his guilty plea was involuntary because counsel should have advised him to accept the plea offer of between three and seven years and that he only he told the plea judge that he was satisfied with plea counsel and that no one promised him anything or threatened him to get him to plead guilty because counsel told him to agree with everything said at the guilty plea hearing.  He also claimed trial counsel only discussed attorney's fees with him, counsel did not discuss his case with him, and they did not talk about this guilty plea until the "last minute" (App. 56-68).[1]

The petitioner timely served and filed a notice of appeal.  Assistant Appellate Defender Robert M. Pachak represented him in collateral appellate proceedings.  On August 17, 2010, Mr. Pachak filed a *Johnson*[2] Petition for Writ of Certiorari on the

---

[1]  Page 13 of the Order was not included in the state court Appendix filed on certiorari. However, a complete copy is attached to the Return in this case.

[2]*Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

petitioner's behalf and petitioned to be relieved as counsel.  The only question presented in the *Johnson* Petition was stated as follows:  "Whether defense counsel was ineffective in giving petitioner incorrect sentencing advice?" (*Johnson* pet. at 2).

The petitioner subsequently filed a *pro se* "Initial Brief For A Writ Of Certiorari," in which he alleged:

1.    Whether defense counsel was ineffective for not investigating petitioner's chain of custody properly?

2.    Whether defense counsel was ineffective in giving petitioner incorrect sentencing advice?

3.    Whether defense counsel was ineffective for not suppressing hearing at guilty plea based upon chain of custody which was broken?

4.    Whether defense counsel was ineffective for not investigating or negotiating the possibility that Petitioner was eligible to be sentence[d] under the Youthful Offender Act?

5.    Whether defense counsel was ineffective for failing to move for a suppression hearing, based on a violation of petitioner's 4th Amendment rights against illegal search [and] seizures?

(*Pro se* initial brief at 2).

The South Carolina Supreme Court filed an order denying certiorari and granting counsel's petition to be relieved on December 16, 2010.  The court sent the Remittitur to the Union County Clerk of Court on January 5, 2011.

In his federal petition now before this court, the petitioner raises the following allegations (verbatim):

**GROUND ONE**:  (Judicial Misconduct)

SUPPORTING FACTS:  Trial judge erred by sentencing Applicant to a second (2nd) offense charge where there was no prior drug related conviction evidence, or on applicant's record. Making Judicial Misconduct by Judge in violation of Petitioner's Constitutional Right pursuant to our 8th and 14th Amendment of our U.S. Constitution and due process of law.

4

**GROUND TWO:**  My 6th and 14th Amendment Right to competent counsel were violated, rendering my custody unlawful in violation.

SUPPORTING FACTS:  My attorney was ineffective because counsel [coerced] applicant to plea. Making applicant's plea not voluntary and knowingly made.

**GROUND THREE:**  My 6th and 14th amendment right to competent counsel were violated, rendering my custody unlawful in violation of the U.S. Constitution.

SUPPORTING FACTS:  My attorney was ineffective for failing to object to false and misleading testimony expressing that Applicant had prior related convictions as stated by the prosecutor during the guilty plea.

**GROUND FOUR:**  My 6th and 14th amendment right to competent counsel were violated, rendering my custody unlawful in violation of the U.S. Constitution.

SUPPORTING FACTS:  My attorney was ineffective for failing to move for a suppression hearing, based upon a violation of Applicant's Fourth Amendment rights against illegal search and seizures.

**GROUND FIVE:**  My 8th and 14th amendment right to due process of law has been violated by Deputy Solicitor, John Anthony's committing prosecutorial misconduct, rendering my custody unlawful in violation of the U.S. Constitution.

SUPPORTING FACTS:   Deputy Solicitor committed prosecutorial misconduct during Petitioner's plea by stating that Petitioner had a prior drug related conviction where in the record there was no evidence of such prior drug conviction offense.

**GROUND SIX:** My 6th and 14th Amendment right to competent counsel were violated, rendering my custody unlawful in violation of the U.S. Constitution.

SUPPORTING FACTS**:** Petitioner argues that his guilty plea was involuntary in that his counsel did not advise him or negotiate the possibility petitioner could have been sentenced under the youth offender act. And as a result of that erroneous advice, the petitioner did not fully understand the consequences of the plea. Counsel's erroneous advice concerning its eligibility

5

to be sentenced under the Y.O.A. was a critical factor in his decision to enter a guilty plea. Petitioner would not have entered the negotiated plea had his attorney correctly advised him of eligibilities for the Y.O.A. (See transcript pp. 10, line 2).

**GROUND SEVEN:** Defense attorney was ineffective for not investigating petitioner's chain of custody. In violation of the 6th and 14th amendment right to competent counsel.

SUPPORTING FACTS**:** Petitioner contends that his guilty plea was involuntary in that his counsel improperly advised and investigated his chain of custody and as a result of that erroneous advise an improper investigation the petitioner did not fully understand the consequences of his plea. Counsel's erroneous advise and improper investigation concerning the chain of custody was a critical factor in his decision to enter a guilty plea. It was an important consequence of his plea which he did not understand. Petitioner would not have entered the negotiated plea had his counsel correctly investigated and advised him of his chain of custody which counsel testified at the evidentiary hearing that the chain of custody was broken. (See PCR transcript pp. 52, lone 10-17).

(Pet. at 5-6, 8, 10, 12-13).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the the the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant

shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

### Ground One

The petitioner's first allegation is that the trial judge erred by sentencing him to a second offense charge where there was no prior drug related conviction in evidence or on his record. He contends that this amounted to "Judicial Misconduct by Judge in violation of Petitioner's Constitutional Right pursuant to our 8th and 14th Amendments to the U.S. Constitution and due process of law."

As argued by the respondent, this allegation fails to state a claim upon which federal habeas corpus relief may be granted because the petitioner is merely complaining about an alleged violation of state law - i.e., the state court finding that he should be sentenced for a second offense on the charges at issue – and federal habeas corpus relief is not available to correct errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' ... Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.   In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (citations omitted). The determination of whether the petitioner should be sentenced for a second defense is a matter for the state courts to decide and not this court. *Id*.

Furthermore, this issue is procedurally defaulted under *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) because the petitioner failed to properly raise it at trial and on direct appeal.[3]   Accordingly, this ground is procedurally barred absent a showing of cause and actual prejudice, or actual innocence. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or his efforts to comply with the State's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  A prisoner can demonstrate cause for procedural default by proving that he was deprived of constitutionally effective assistance of counsel. *Id.* In the present case, the petitioner cannot show cause for the default, since the issue could have been raised in the state trial court

---

[3]  He could not raise this allegation in state PCR because it was one that could have been addressed at trial and presented to the state court of appeals on direct appeal. *See* S.C. Code Ann.§ 17-27-20(b) (1986) ("This remedy is not a substitute for nor does it affect any remedy incident to the proceedings in the trial court, or of direct review of the sentence or conviction"); *Drayton v. Evatt*, 430 S.E.2d 517, 520 (S.C. 1993) (issues that could have been raised at trial or in direct appeal cannot be asserted in PCR application absent a claim of ineffective assistance of counsel).

(at a jury trial or at sentencing) and thereafter presented to the state court of appeals on direct appeal.  Also, there has not been any finding that trial counsel was ineffective, thereby to provide cause for the default. *See id.* ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, [466 U.S. 668 . . . (1984) ], we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default").

Moreover, the petitioner cannot show prejudice from the default because his allegation lacks merit and is without evidentiary support in this record. *See Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011) (federal habeas review of state-court proceeding was limited to record before the state court).  Under S.C Code Ann. § 44-53-375(C) (Supp. 2011),

> A person who knowingly sells, manufactures, delivers, purchases, or brings into this State, or who provides financial assistance or otherwise aids, abets, attempts, or conspires to sell, manufacture, deliver, purchase, or bring into this State, or who is knowingly in actual or constructive possession or who knowingly attempts to become in actual or constructive possession of ten grams or more of . . . cocaine base, as defined and otherwise limited in Section 44-53-110, 44-53-210(d)(1), . . . is guilty of a felony which is known as "trafficking in . . . cocaine base."

S.C. Code Ann. § 44-53-375(C).  *See also State v. Stanley*, 615 S.E.2d 455, 464-65 (S.C. Ct. App. 2005).  The punishment for trafficking in crack cocaine, second offense, is " a term of imprisonment of not less than five years nor more than thirty years, no part of which may be suspended nor probation granted, and a fine of fifty thousand dollars." S.C. Code Ann. § 44-53-375(C)(1)(b).

Although "section 44-53-375(C) of the South Carolina Code . . . does not define what constitutes a prior narcotics conviction that would support enhancement[,] . . . the version of section 44-53-470 of the Code, in effect at the time of [the petitioner's plea], stated '[a]n offense is considered a second or subsequent offense, if, prior to his conviction

10

of the offense, the offender has at any time been convicted under this article or under any State or Federal statute relating to narcotic drugs, marijuana, depressant, stimulant, or hallucinogenic drugs. S.C. Code Ann. § 44-53-470 (2002).'" *Robinson v. State*, 693 S.E.2d 402, 404 (S.C. 2010). "[S]ection 44-53-470 'plainly states that an offense will constitute a second offense if the offender has at any time been convicted under this article.'" *Id.*

Thus, the petitioner was properly sentenced as a second offender "if, prior to his conviction of the offense, [he] has at any time been convicted under this article or under any State or Federal statute relating to narcotic drugs, marijuana, depressant, stimulant, or hallucinogenic drugs." *Id.*  At the time of his guilty plea, the petitioner did not dispute that he was being properly sentenced for second offenses.  To the contrary, he indicated that he understood the following explanation of his sentencing by the trial court:

> I have in front of me three indictments you've been indicted for three drug offenses.  The State is allowing you to plead to two 2nd Offenses of Distribution of Crack.  Those two indictments allege that you were involved in the distribution of crack here in Union County in violation of the laws of this State on November the 22nd 2005 and you did distribute crack to an undercover operative.  And the Second Indictment alleges that you did the same thing on December the 1st 2005. Distribution of Crack 2nd Offense carries up to five to thirty years and a fine of not more than fifty thousand dollars.  It is a serious offense; that means if in your life time you receive three serious or a combination of three serious and most serious offenses you would be subject to a life sentence. That is a true life without parole sentence. It is a parole ineligible offense felony.  Being parole ineligible means that you would have to serve at least eighty five percent of whatever sentence you would receive before you would be allowed any early release and if you were allowed an early release it would be into a community supervision program that would have certain conditions similar to what you would have if you were on probation. It also does not allow for any probation or a suspended sentence.

11

(App. 3-4). The petitioner indicated that he wished to plead guilty to these charges. He further indicated that he understood the following explanation of sentencing for second offense trafficking in crack cocaine and that he wished to plead guilty:

> The trafficking is alleged to have occurred on that on or about January the 25th 2006 when you were involved in trafficking crack cocaine in an amount from ten to twenty-eight grams in violation of the laws of this state. This is a Second Offense it also carries five to thirty years or a fine up to fifty thousand dollars and it's also a serious offense it is a felony. It is a parole ineligible offense and it does not allow for any probation or a suspended sentence just like the charges I went over a moment ago. In addition this is a violent offense which means that if you are incarcerated and receive a sentence you would not be eligible for certain programs in the Department of Corrections that non-violent offenders are entitled to participate in.

(App. 4-5).

Further, the petitioner indicated that, other than the recommendation of the 12-year cap on the charges to which he pleading guilty, no one had made any other promises or threats that would cause him to enter his guilty plea; that he was not under the influence of anything that would cause him to be intoxicated; that he was entering his plea to the three charges freely and voluntarily; and that he understood his right to a jury trial on the charged offenses, the various rights inherent in the trial, and that he was waiving these rights by pleading guilty. The trial court specifically explained the presumption of innocence, the State's burden to prove his guilt beyond a reasonable doubt, the right to remain silent, his right to confront witnesses against him and his right to compulsory process (App. 5-6). See *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (While the defendant's representations at the time of his guilty plea are not "invariably insurmountable" when challenging the voluntariness of his plea, these representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier . . . . Solemn declarations in open court carry a strong presumption of verity." Also, a subsequent

12

presentation of conclusory allegations and contentions that are wholly incredible in the face

of the record are subject to summary dismissal).

Then, the following colloquy took place with respect to the petitioner's prior

record:

> MR. ANTHONY:  As to his record, your Honor, he was
> convicted in 2004; a failure to stop for a blue light. He was
> convicted in 2004 a simple possession of marijuana. And in
> 2003 he has a DUS conviction and then he has a prior drug
> conviction in 2004 for PWID cocaine and PWID cocaine
> proximity.
>
> MR. BOGGS: When was the marijuana?
>
> MR. ANTHONY: It was NCIC here it says cocaine. I guess - Did
> you check on that, Mr. Fowler? They were saying marijuana.
>
> THE COURT: I'll assume its marijuana and in any event, he's
> got a fair amount of drug violations in the past.

(App. 7).  The trial judge did not ask the petitioner to agree with the representation of his

prior convictions (App. 7).

The petitioner did not present any argument or evidence at his plea or in state

PCR to refute the prosecutor's representation as to his prior convictions.  Thus, his

allegation lacks merit because it is unsupported by the record of the state court

proceedings.  In his response in opposition to the motion for summary judgment, the

petitioner simply cites the guilty plea transcript wherein the judge sentenced him to 12 years

on each charge and makes no other argument regarding his procedural default on this

ground (pet. resp. m.s.j. at 1 (citing App. 12).

In the alternative, the petitioner must show a miscarriage of justice.  In order

to demonstrate a miscarriage of justice, the petitioner must show he is actually innocent.

Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United

States*, 523 U.S. 614, 623 (1998).  The petitioner cannot establish that the errors he

complains of probably resulted in the conviction of an innocent person. *Schlup v. Delo*, 513

13

U.S. 298, 327 (1995).  In order to pass through the actual innocence gateway, a petitioner's case must be "truly extraordinary." *Id.*  The petitioner has made no such showing here. Based upon the foregoing, this claim is procedurally barred.

### Ground Two

The petitioner contends in Ground Two that his guilty plea was involuntary and his trial counsel was ineffective because trial counsel coerced him to plead guilty.  He does not specify how counsel coerced him, but this appears to be the same allegation that was presented by collateral appellate counsel in the *Johnson* Petition and as Issue 2 in the petitioner's *pro se* response to the *Johnson* Petition: *i.e.*, that his guilty plea was involuntary because counsel should have advised him to accept the plea offer of between three and seven years; counsel only discussed attorney's fees with him; counsel did not discuss his case with him, and they did not talk about this guilty plea until the "last minute."[4]

The petitioner testified in PCR that counsel knew of a plea offer that would limit his sentencing to three to seven years imprisonment and that counsel failed to advise him to accept this offer.  He also admitted that he told the trial court at his plea that he was satisfied with counsel and that no one had promised him anything or threatened him to get him to plead guilty, but he claimed that he only gave those responses because counsel told him to agree with everything said at the guilty plea hearing.  He further claimed that counsel only discussed attorney's fees with him, that counsel did not discuss his case with him, and that they did not talk about this guilty plea until the "last minute" (App. 30-34).

The petitioner's trial counsel testified that he has been in practice for 13 years - he spent two years as a prosecutor and 11 in private practice - and the majority of his caseload is in criminal defense work.  Counsel explained that he was hired by the

---

[4]  As argued by the respondent, to the extent his claim in Ground Two alleges his guilty plea was involuntary for a different reason, this claim was not exhausted and is procedurally defaulted under *Coleman*.

petitioner's female friend, A. J., in February 2006.  At that time, the petitioner was already locked up, and counsel had a public defender appointed to represent him.  Counsel contacted the court to see if he could get a bond on these charges, and he was informed that "there was an initial appearance and prelim[inary hearings] if we wanted one on March 7th."  This was when counsel first met with the petitioner (App. 35-36).  Counsel thought that he might be able to get a plea heard by a judge whom he felt would be lenient, but the petitioner was not interested in a plea.  Instead, he wanted to make bond (App. 36-37).

Counsel explained that he met with the petitioner "at length," at least six times and probably more (App. 36-42).  Also, counsel's file contained "more letters" where counsel talked to the petitioner "on the phone, talked with his family, asked him to come to my office."  The petitioner came to counsel's office in "Greenville a couple of times to make supplemental payments, we did meet, we did talk about pleading versus trial, things like that."  Counsel further explained that "[I] have several letters which document. I try – when someone is facing a lot of time and they've got a big decision to make I know that it's hard on them, but at the same time I try to explain to them along the way in person and in a letter what their choices are.  And so I think that we met at least six times and discussed many things other than money" (App. 39).

Counsel's recollection was that there was never an offer to allow a plea with a seven year cap.  He testified that he spoke with Ms. Horton in 2006 about arranging a straight up plea in front of Judge Burch with a range between five and 30 years, but this plea never materialized.  Rather than an offer of a seven year sentence, counsel's recollection was that "it was, 'Hey, if I can get them to offer you seven years will you do that?'  Because one of the statutes and I don't memorize the statutes one of them was five to 30, one of them was seven to 30 or they changed, . . . I think -- that's why I told him the lowest we could get would be seven, in the seven range possibly.  But I never promised him anything, it was all negotiations and there was nothing a straight-up offer" (App. 40-41).

15

In February 2007, counsel wrote the petitioner and informed him that counsel would moved to be relieved if the petitioner did not contact counsel. In response to another letter in April and communication with the petitioner's mother, the petitioner finally contacted counsel in May and eventually the cases were set for trial on August 13, 2007 (App. 44-45).

As to the plea in August of 2008, counsel testified that the petitioner never indicated that he did not want to plead guilty. Counsel could not remember the first time he discussed the plea with a cap of 12 years but he remembered discussing it during their lengthy meeting the day of the plea. At that time, counsel went through checklist of the ten then-current charges with the petitioner, including the offer of a cap of 12 years and charges that were being *nolle prossed*, including charges for which the petitioner had not retained counsel to represent him. The petitioner indicated his approval to this. Also, counsel communicated all plea offers to the petitioner (App. 45-47).

Finally, counsel denied telling the petitioner to be untruthful at the plea in responding to the judge's questioning, and he thought that the petitioner understood what was happening at the time of the plea. Counsel testified that "I found Bruce to be one of most articulate, nice people other than what he was charged with, and I spoke highly of him, his mother and his sister. His mother and his sister were there at the plea and I met with them outside. I didn't tell Bruce to answer anything other than the truth" (App. 47-48).

Collateral counsel also inquired about whether there was a complete chain of custody for the drugs in the various charges. In particular, collateral counsel inquired about whether the chain on the trafficking charge was defective. Counsel responded, "No, I have that chain of custody, I don't think it's lacking." Counsel discussed with the petitioner the absence of a signature on a form B Rule 6 that an Officer Smith had not signed. He explained on redirect examination, however, that there was no "motions practice widely used in the State of South Carolina," and, rather, the issue would have to be ruled on at trial. "[E]ither you position it for plea or you position it for trial. So I told him that this Kevin Smith

16

was still available, that my research indicated that a judge might, might suppress the trafficking charges but there's still these distributions out there so they would go to trial on those where we had a complete chain of custody" (App. 51-53).

In rejecting the claim that the plea was involuntary, the PCR judge first found that "the Applicant's testimony is not credible, while also finding plea counsel's testimony is credible" (App 63-64).  Later, he stated the applicable law, and he recited the testimony presented (App. 64-67).  Judge Goldsmith then found as follow:

> This Court finds that the Applicant's allegation that his guilty plea was involuntary has no merit. In addition to the evidence and testimony presented at the hearing, the transcript of the guilty plea hearing reflects that the Applicant's plea was knowingly and voluntarily entered with a full understanding of the charges and consequences of the plea. [*Boykin v. Alabama*, 395 U.S. 238 (1969); *Dover v. State*, 405 S.E.2d 391 (S.C. 1991)]. This Court further finds that the Applicant has not presented any valid reasons why he should be allowed to depart from the truth of the statements he made during his guilty plea hearing. Furthermore, the Applicant has not met his  burden of proving that his guilty plea was involuntary, or that there is any reasonable probability he would have chosen to go to trial if it were not for counsel's alleged deficient performance. Accordingly, this allegation is denied.

(Resp. m.s.j., attach. no. 9, Order of Dismissal at 12-13).[5]

The petitioner is not entitled to relief on this ground.  Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687.  To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result

---

[5]As noted by the respondent, page 13 of the Order of Dismissal was not included in the state court Appendix filed on certiorari. However, the respondent included a complete copy as an attachment to the Return.

of the proceeding would have been different." *Id*. at 694.  Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id*. at 697.  With regard to guilty pleas, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Similarly, a guilty plea is constitutionally valid if it "'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Id.* at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  A plea is knowingly and intelligently made if a defendant is "'fully aware of the direct consequences'" of his guilty plea and not induced by threats, misrepresentation, including unfulfilled or unfulfillable promises, or by "'promises that are by their nature improper as having no relationship to the prosecutor's business.'" *Brady v. United States*, 397 U.S. 742, 755 (1970).  The defendant may not later assert that his plea was invalid except in extremely limited situations, such as where counsel was ineffective. *Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977).

This court agrees with the respondent that the petitioner cannot establish that the PCR court either made an unreasonable determination of the facts or unreasonably applied federal law.  The PCR court's factual findings in denying relief upon this claim are supported by the record.  The record reflects that counsel repeatedly discussed the case with the petitioner and that counsel confirmed many of his discussions in writing.  Also, both counsel's testimony and the transcript of the plea reflect that counsel did nothing to coerce the petitioner or otherwise represent the petitioner less than zealously.  The record further reflects that the petitioner's guilty plea was knowingly and voluntarily entered with a full understanding of the charges, the terms of the bargain to which he agreed and pursuant to

which he was sentenced, as well as the consequences of his plea. Accordingly, summary judgment should be granted on this ground.

### Ground Three

In Ground Three, the petitioner alleges that counsel was "ineffective for failing to object to false and misleading testimony expressing that [the petitioner] had prior related convictions as stated by the prosecutor during the guilty plea." The PCR judge noted in his order that the petitioner "failed to present any testimony or evidence in support of [the] claim he presented in his PCR application that plea counsel was ineffective for failing to object to the solicitor's representation of his prior record . . . . Therefore, [the petitioner] waived [this] allegation . . . "(App. 64). The issue was not raised in the *Johnson* Petition or in the petitioner's *pro se* response to the *Johnson* Petition in the PCR appeal. Accordingly, the claim is procedurally defaulted in federal habeas corpus. *Coleman*, 501 U.S. at 729-30. Further, the petitioner cannot show cause for the default, since the issue could have been raised in the state PCR court and thereafter presented to the state supreme court on certiorari. Any ineffective assistance of state habeas counsel cannot excuse procedural default given that there is no Sixth Amendment right to effective assistance of counsel in state habeas proceedings. *See Barraza v. Cockrell,* 330 F.3d 349, 352 (5th Cir. 2003). Also, he cannot show prejudice from the default because his allegation lacks merit under *Strickland* and *Hill* for the various reasons set forth in Ground One. Furthermore, the petitioner has made no showing of actual innocence. Based upon the foregoing, this claim is procedurally barred.

### Grounds Four, Seven, and Eight

In Ground Four, the petitioner maintains that counsel was "was ineffective for failing to move for a suppression hearing, based upon a violation of [the petitioner's] Fourth Amendment rights against illegal search and seizures." In Ground Seven, he alleges ineffectiveness for failing to adequately investigate the chain of custody for the crack cocaine

related to the charge of trafficking.  In Ground Eight, he claims that these errors rendered his guilty plea involuntary.  In these allegations, he contends that counsel was ineffective for not adequately investigating and then moving to suppress the crack cocaine involved in the trafficking charge, based upon a defect in the chain of custody.  The respondent argues, and this court agrees, that the state courts' rejection of these claims, which were presented as Issues 1, 3, and 5 in the *pro se* response to the *Johnson* Petition, was not "contrary to" and did not involve an "unreasonable application of" clearly established United States Supreme Court precedent under § 2254(d)(1).

        The petitioner did not testify in support of the present claims in PCR.  However, as discussed above, his PCR counsel questioned trial counsel at the PCR hearing about whether there was a complete chain of custody for the drugs in the various charges. Specifically, trial counsel was asked whether the chain of custody on the trafficking charge was defective.  Counsel responded, "No, I have that chain of custody, I don't think it's lacking."  Counsel discussed with the petitioner the absence of a signature on a form B Rule 6 that an Officer Smith had not signed.  He explained on redirect examination, however, there was no "motions practice widely used in the State of South Carolina."  Rather, the issue would have to be ruled on at trial. "[E]ither you position it for plea or you position it for trial.  So I told him that this Kevin Smith was still available, that my research indicated that a judge might, might suppress the trafficking charges but there's still these distributions out there so they would go to trial on those where we had a complete chain of custody" (App. 51-54).

        After discussing the facts and the law related to the petitioner's ineffective assistance claims (App. 57-63), the PCR judge rejected those claims, based upon the petitioner's failure to prove either deficient performance or prejudice under *Strickland* and *Hill* (App. 63-64).  The PCR judge's rejection of the chain of custody/ motion to suppress issue was based upon a finding that the petitioner "failed to present any testimony or

evidence in support of" it (App. 64). The petitioner did not present any evidence concerning counsel's investigation. He likewise did not testify in support of his claim, nor did he otherwise present evidence that there was a defect in the chain of custody that was fatal to the State's prosecution of him for trafficking in crack. To the contrary, the only evidence that he presented on this claim was trial counsel's testimony, and trial counsel's testimony does not support any suggestion of ineffectiveness.

In South Carolina, guilty pleas are unconditional. *See State v. Truesdale*, 296 S.E.2d 528, 529 (S.C. 1982) ("Pleas of guilty are unconditional, and if an accused attempts to attach any condition or qualification thereto, the trial court should direct a plea of not guilty."). Therefore, counsel correctly advised the petitioner that he could either go to trial and challenge the chain of custody, which might result in suppression of the crack involved in the trafficking charge, or plead guilty and waive this potential defense. Additionally, the only evidence is that Officer Smith was still available and might be able to cure the defect by his live testimony. However, even if the trial court granted the suppression motion, the motion would not bar introduction of the crack involved in either of the counts of distribution. Also, the only evidence is that, following his discussion with the petitioner, the petitioner made the decision to enter the plea and thereby waive any challenge to the chain of custody. The petitioner simply did not prove that his trial counsel's performance fell below an objective standard of reasonableness and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Accordingly, summary judgment should be granted on these grounds.

### *Ground Five*

In Ground Five, the petitioner alleges that the Deputy Solicitor committed prosecutorial misconduct during his plea by falsely stating that he had a prior drug related conviction when there was no evidence of a prior drug conviction offense in the record.

21

Freestanding claims must be raised at the trial level and then on direct appeal. See *Drayton*, 430 S.E.2d at 520 ("Issues that could have been raised at trial or on direct appeal cannot be asserted in an application for post-conviction relief absent a claim of ineffective assistance of counsel."). As discussed above with regard to Ground One, this ground is procedurally barred, and the petitioner has failed to show cause and prejudice for the default. The only evidence in the record is that the petitioner had at least one prior offense that supported sentencing for a second offense. Furthermore, the petitioner has made no showing of actual innocence.

### Ground Six

In Ground Six, the petitioner claims that his guilty plea was involuntary because "counsel did not advise him or negotiate the possibility petitioner could have been sentenced under the youth offender act. And as a result of that erroneous advice, the petitioner did not fully understand the consequences of the plea." This allegation is also procedurally defaulted in federal habeas corpus because the state supreme court was procedurally barred from considering the issue by the petitioner's failure to present the issue in the PCR court and obtain a ruling thereon. As discussed above, the state supreme court performed its *Johnson* review of the record. Yet, this does not obviate the need for error preservation of appellate issues. Thus, even though this issue was raised on certiorari as Issue 4 in the *pro se* response to the *Johnson* Petition, the state supreme court could not consider it on appeal because the petitioner did not present it and obtain a ruling on it in the PCR court. *See e.g., Evans v. State*, 611 S.E.2d 510, 515 (S.C. 2005) (an issue must have been raised to and ruled upon by the PCR judge to be preserved for appellate review); *Plyler v. State*, 424 S.E.2d 477 (S.C. 1992) (issue or argument which is neither raised at PCR hearing nor ruled upon by the PCR court is procedurally barred from appellate review); *Hyman v. State*, 299 S.E.2d 330, 331 (1983) (petitioner failed to preserve for review on appeal claim that trial counsel was ineffective for failure to object that sentences constituted

22

cruel and unusual punishment where point was not raised in PCR application or at hearing). "Imposing this preservation requirement on the appellant is meant to enable the lower court to rule properly after it has considered all relevant facts, law, and arguments." *I'On, L.L.C. v. Town of Mt. Pleasant*, 526 S.E.2d 716, 724 (2000)

The petitioner cannot show cause for the default, since the issue could have been raised in the state PCR court and thereafter presented to the state supreme court on certiorari.    Also, the ineffective assistance of state habeas counsel cannot excuse procedural default given that there is no Sixth Amendment right to effective assistance of counsel in state habeas proceedings. *Coleman*, 501 U.S. at 752-53;

Furthermore, as argued by the respondent, the petitioner cannot show prejudice from the default because his allegation lacks merit under *Strickland* and *Hill*. When the petitioner pled guilty, S.C. Code Ann. § 24-19-10(d)(ii) provided, in pertinent part:

> (d) "Youthful offender" means an offender who is: . . . (ii) seventeen but less than twenty-five years of age at the time of conviction for an offense that is not a violent crime, as defined in Section 16–1–60, and that is a misdemeanor, a Class D, Class E, or Class F felony, or a felony which provides for a maximum term of imprisonment of fifteen years or less.

S.C. Code Ann. § 24-19-10(d)(ii).

Under S.C. Code Ann. § 16-1-90 (Supp. 2008), the crime Manufacture, Distribution of Methamphetamine or Cocaine Base, Second Offense (codified in S.C. Code Ann. § 44-53-375(B)(2)) is listed as a Class A Felony.  Thus, the petitioner was ineligible for a YOA sentence on either of the distribution charges.  "For purposes of definition under South Carolina law, a violent crime includes the offenses of . . . trafficking cocaine base as defined in Section 44-53-375(C)." S.C. Code Ann. § 16-1-60 (Supp. 2008).  As a result, he could not receive a YOA sentence for the trafficking charge.  At the time of the guilty plea, trial counsel informed the trial court that the petitioner "mentioned a YOA sentence [in our discussions] and I told him he's not eligible for that" (App. 10).  Thus, counsel was aware of

23

the existence of the possibility of a YOA sentence, but he correctly advised the petitioner that he was ineligible for such sentencing.  Given this record, the petitioner cannot show either deficient performance or resulting prejudice under *Strickland* and *Hill* on the part of counsel, and, therefore, he cannot show prejudice from his procedural default.  Accordingly, this ground is procedurally barred.

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 25) be granted.

s/ Kevin F. McDonald
United States Magistrate Judge

February 3, 2012
Greenville, South Carolina

24

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.